J-S38040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HASAN S. HARRIS | |
| Appellant | No. 2532 EDA 2015 |

Appeal from the Judgment of Sentence June 29, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012691-2013

BEFORE: FORD ELLIOTT, P.J.E., OLSON, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.: **FILED JULY 06, 2016**

Hasan S. Harris ("Appellant") appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his jury trial convictions for third degree murder, criminal conspiracy, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and possessing instruments of crime.[1] We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case; therefore, we have no reason to restate them. *See* Trial Court Pa.R.A.P. 1925(a) Opinion, filed November 23, 2015, ("TCO") at 1-8.

Appellant raises the following issues for our review:

---

[1] 18 Pa.C.S. §§ 2502(c), 903, 6106, 6108, and 907, respectively.

WAS THE EVIDENCE PRESENTED AT TRIAL LEGALLY INSUFFICIENT BECAUSE THE COMMONWEALTH FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT [APPELLANT] WAS INVOLVED IN THE CRIME GIVEN THE INCONSISTENT AND CONTRADICTORY IDENTIFICATION EVIDENCE AND THE RESULTS OF DNA ANALYSIS OF VARIOUS ITEMS OF PHYSICAL EVIDENCE RECOVERED IN THE CASE?

WAS THE VERDICT FINDING [APPELLANT] GUILTY OF THIRD DEGREE MURDER AND RELATED CHARGES AGAINST THE WEIGHT OF THE EVIDENCE AND SHOCKS THE CONSCIENCE GIVEN THE INCONSISTENT AND CONTRADICTORY IDENTIFICATION EVIDENCE AND THE RESULTS OF DNA ANALYSIS OF VARIOUS ITEMS OF PHYSICAL EVIDENCE RECOVERED IN THE CASE?

Appellant's Brief at 4.

Appellant challenges the sufficiency and the weight of the evidence for his aforementioned convictions as it relates to his identity. Specifically, he claims that the Commonwealth's presentation of unreliable and contradictory evidence combined with the lack of incriminating DNA evidence against him entitles him to a new trial, because the Commonwealth failed to prove that he was the perpetrator of the crimes. We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every

possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super.2005)).

We review challenges to the weight of the evidence as follows:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 741 A.2d 666, 672–73 (Pa.1999) [*cert. denied*, 121 S.Ct. 80, 148 L.Ed.2d 42 (U.S.2000)]. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Devine*, 26 A.3d 1139, 1146 (Pa.Super. 2011), *appeal denied*, 42 A.3d 1059 (Pa.2012) (some internal citations omitted).

This Court has recognized that "a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." **Commonwealth v. Thompson**, 106 A.3d 742, 758 (Pa.Super.2014). Accordingly, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa.2013). A trial judge should not grant a new trial due to "a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." **Id.** Instead, the trial court must examine whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." **Id.** Only where the jury verdict "is so contrary to the evidence as to shock one's sense of justice"[2] should a trial court afford a defendant a new trial. **Id.**

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Rose Marie

---

[2] When "the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." **Commonwealth v. Cruz**, 919 A.2d 279, 282 (Pa.Super.2007) (internal citations omitted).

- 4 -

DeFino-Natasi, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. ***See*** TCO at 8-12 (finding: video surveillance of Appellant minutes before shooting combined with four eyewitnesses' testimony of Appellant before, during, and after shooting constitutes sufficient evidence to support jury's determination that Appellant was perpetrator of crimes; and verdict was not against weight of evidence where direct and circumstantial evidence supported convictions and inconclusive DNA evidence that incriminated Appellant's accomplice did not exonerate him). Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2016

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA**

**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA   :      CP-51-CR-0012691-2013

v.                       :      2532 EDA 2015

HASAN HARRIS               :

                               :

**OPINION**

FILED

NOV 2 8 2015

Rose Marie DeFino-Nastasi, J.

Crimi...
First Judicial ... of PA

**PROCEDURAL HISTORY**

On December 2, 2014, Defendant was found guilty after a jury trial, presided over by the Honorable Rose Marie DeFino-Nastasi, of Third Degree Murder, 18 Pa.C.S. § 2502(c), as a felony of the first degree; Conspiracy, 18 Pa.C.S. § 903, as a felony of the first degree; Violation of the Uniform Firearms Act, 18 Pa.C.S. § 6106, as a felony of the third degree; VUFA 6108, 18 Pa.C.S. § 6108, as a misdemeanor of the first degree; and Possession of an Instrument of Crime (PIC), 18 Pa.C.S. § 907(b), as a misdemeanor of the first degree.

On June 29, 2015, Defendant was sentenced to twenty (20) to forty (40) years for the third degree murder conviction; a concurrent five (5) to ten (10) years for the conspiracy conviction; a concurrent three-and-a-half (3½) to seven (7) years for the VUFA 6106 conviction; and five (5) years probation for the VUFA 6108 conviction, to run consecutively. No further penalty for the PIC conviction. Defendant received an aggregate sentence of twenty (20) to forty (40) years plus five (5) years probation.

On July 7, 2015, Defendant filed a post sentence motion, which was denied by this Court without a hearing on July 20, 2015.

On August 14, 2015, Defendant filed the instant appeal to the Superior Court.

1

On September 10, 2015, Defendant filed a 1925(b) Statement of Matters Complained of on Appeal, pursuant to an Order of the Court, claiming that:

1. There was insufficient evidence to sustain the jury's verdict because the Commonwealth failed to prove beyond a reasonable doubt that the Defendant was involved in the crime "given the inconsistent and contradictory identification evidence and the results of DNA analysis of various items of physical evidence recovered in the case."

2. The jury's verdict of guilt for third degree murder was against the weight of the evidence and shocks the conscience "given the inconsistent and contradictory identification evidence and the results of DNA analysis of various items of physical evidence recovered in the case."

## FACTS

On June 16, 2013, at approximately 1:30 p.m., Defendant Hasan Harris and his co-conspirator shot and killed Tyrel Washington near the basketball courts at 8th and Poplar Street in Philadelphia.[1] The Commonwealth alleges that Defendant's co-conspirator is Shaheed "Chris" Black. Black is awaiting trial for the decedent's murder as of the filing of this Opinion.

Testimony at trial showed that the Defendant was from the Penn Town Projects and the decedent was from the Richard Allen Projects. In March 2011, one of the Defendant's friends from the 700 block of Green Street in Penn Town, Dwayne "Wayne" Ballard, was shot and killed. N.T. 11/20/14 at pp. 4-10.[2] There is an on-going feud between the boys from Penn Town

---

[1] Dr. Sam Gulino, Chief Medical Examiner, testified that the cause of death was a gunshot wound to the torso and the manner of death was homicide. N.T. 11/19/14 at pp. 129-37.

[2] Detective Brian Peters testified that photographs were taken of the Defendant's tattoos at the time of his arrest. The Defendant has "R.I.P. Wayne" tattooed on the upper part of his chest. N.T. 11/24/14 at pp. 30-38.

2

and Richard Allen, and detectives had knowledge that people from the Richard Allen Projects may have been involved in Wayne's murder. *Id.* at p. 11.

Video surveillance from police department-owned pole cameras captured the Defendant and his alleged co-conspirator, Shaheed Black, on bicycles minutes before the shooting at the intersection of 7th and Green Street. The two are seen speaking to witness Mikell Durant on camera before riding north on 7th Street. Durant testified that he grew up with the Defendant, the decedent, and Wayne Ballard.[3] He identified the Defendant and Black as being the two males in dark colored sweatshirts on bikes that he is seen speaking to on camera. N.T. 11/21/14 at pp. 12-16, 21-40.

Montel Washington, the decedent's brother, testified that his brother and he lived in the Richard Allen Projects near 8th and Poplar Street. He also testified that he has known the Defendant for a long time; they played on the same basketball team. N.T. 11/20/14 at p. 59. The Defendant lived in Penn Town, and Washington testified that the boys from Richard Allen do not get along with the boys from Penn Town. *Id.* at pp. 15-16, 19, 31.

Washington testified that the decedent and he were playing basketball at the East Poplar Playground with fifteen to twenty people on June 16, 2013, when two boys on bicycles in dark colored hooded sweatshirts approached approximately forty feet away from the court on the grass. *Id.* at pp. 19-23, 27. Washington testified that the decedent asked him, "[W]ho them boys coming in with hoodies?" *Id.* at p. 23. Five seconds later, Washington heard gunshots.

Washington looked behind him and saw one of the boys shooting a black firearm towards where he, his brother, and the other people were playing basketball. *Id.* at pp. 25-27, 40-41. He testified that one of the boys was wearing a hooded sweatshirt with "a picture of a dead person"

---

[3] Mikell Durant testified that his friends and he wore clothing commemorating Wayne's life. *Id.* at pp. 12-16. Testimony at trial showed that one of the shooters was wearing a "Rest in Peace Wayne" sweatshirt. This sweatshirt was recovered with the bikes in the Marshall Square Apartments in Penn Town.

3

that said "Rest in Peace" on the back. The other was wearing a hooded sweatshirt that covered his face. Washington did not see the faces of the shooters because they had hoods on, and as soon as he saw the gun, he quickly turned and ran. *Id.* at pp. 21-23.

Washington and the decedent ran towards 8th and Poplar Street. When they got to the corner, the decedent stated he had been shot.

Detectives showed Washington the video surveillance captured prior to the shooting from the pole camera at 7th and Green Street. He identified the two boys on bikes in dark colored sweatshirts as the shooters; the same two boys Mikell Durant identified as the Defendant and Shaheed Black.

Detectives also showed Washington video surveillance captured minutes after the shooting from a business on the 700 block of North 7th Street, approximately two blocks from where the sweatshirts and bikes were recovered. The video shows two males walking without sweatshirts or bikes. Washington identified the Defendant as being the individual in the video wearing a white "wife-beater." *Id.* at pp. 51-59.

Richard Ellis testified that he was standing outside the park at 8th and Poplar Street when he heard gunshots. N.T. 11/19/14 at pp. 92-96. Ellis ran towards the park. When he got close, he observed two boys with hoods on and bandanas covering their faces, standing side-by-side in the grass on bikes shooting into a crowd of people on the basketball court. *Id.* at pp. 97-100. He heard approximately fifteen to twenty gunshots in total. *Id.* at p. 95. Ellis testified that one of the shooters was wearing a black hooded sweatshirt with "Rest in Peace" on the back. *Id.* The shooters fled south on Brown Street after the shooting. *Id.* at p. 117.

Detectives showed Ellis photographs of two bikes and a hooded sweatshirt recovered at the Marshall Square Apartments approximately two blocks from the crime scene. Ellis stated that

4

those were the bikes he saw the shooters riding and that one of the shooters was wearing the "Rest in Peace" sweatshirt pictured. *Id.* at pp. 104-14.

Detectives also showed Ellis video surveillance from the pole camera at 7th and Green Street during a second statement on September 17, 2013. Ellis recognized the bikes, clothing, and general build of the two boys in the video as being that of the shooters. *Id.*

Nathaniel Rogers testified that he was riding his bicycle on 7th Street when he heard gunshots behind him. N.T. 11/19/14 at pp. 139-41, 157. He made a U-turn and rode towards Poplar Street. Shortly thereafter, Rogers saw two young black males on bikes ride towards him and then quickly turn into the Marshall Square Apartments. *Id.* at pp. 157-58. He testified that both boys "looked a little worried or antsy" and appeared "nervous." *Id.* at p. 143.

Rogers stated to detectives that one of the boys had on jeans and a black hoodie with "Rest in Peace Wayne" on the back. *Id.* at pp. 161-62. The other was wearing a white T-shirt, gray cargo shorts, and a hunter green and white baseball cap. *Id.* at p. 162.

Rogers turned around again, and as he was riding, he saw the same two boys running southbound on Marshall Street near 7th and Brown Street. *Id.* at pp. 145-46, 159. He testified that their clothing was different—the one did not have the "Rest in Peace" sweatshirt on, but as far as their build and complexion, it appeared to be the same two boys. *Id.*

Rogers continued to ride and when he got to 8th and Poplar Street, he saw a young man lying on the ground surrounded by police officers. Rogers rode back to the Marshall Square Apartments. Upon arrival, he noticed that the two bikes he had seen the boys riding were in the bushes on the side of an apartment building. *Id.* at pp. 143-44. The hunter green and white hat was hanging on the handlebars of one of the bikes. Rogers went back to the scene and overheard

officers state that they were looking for two boys on bikes. Rogers conveyed to officers what he saw and directed them to the bikes. *Id.* at pp. 145, 160.

Rogers identified the Defendant in a photo array and stated that the Defendant resembled the person on the bike. He did not identify the Defendant at the preliminary hearing or at trial. *Id.* at pp. 172-74.

Officer Terry Tull of the Crime Scene Unit testified that no ballistics evidence was recovered at the scene. N.T. 11/19/14 at p. 193.[4] A blue Divided Brand sweatshirt and a black Nike sweatshirt with "Rest in Peace Wayne" and the dates March 25, 1993 and March 5, 2011 written on the back were recovered from a dumpster in the Marshall Square Apartments; a Trek bicycle and a Comanche bicycle were recovered in bushes approximately 150 feet from the dumpster; and a green and white baseball cap was found on the handlebars of one of the bikes. *Id.* at pp. 193-99, 207.

Lynn Haimowitz testified as an expert in DNA analysis. N.T. 11/21/14 at p. 88. Swabs taken from evidence were compared with buccal swabs taken from the Defendant, Shaheed Black, and the decedent. *Id.* at pp. 85-167. It was determined that Shaheed Black was one of the contributors of DNA in samples collected from the black sweatshirt recovered in the dumpster at the Marshall Square Apartments, the baseball hat found on the right handlebar of the Trek mountain bike recovered near the dumpster at the Marshall Square Apartments, and the left grip of the Trek bicycle. *Id.* DNA tests were inconclusive with regard to the Defendant. *Id.*

Rodney Blackshear testified that he was incarcerated on the same pod/block as the Defendant at Curran-Fromhold Correctional Facility (CFCF) in December 2013. N.T. 11/24/14 at pp. 52-56. The Defendant asked him to set up a three-way call and Blackshear agreed.

---

[4] Ann Marie Barnes of the Firearms Identification Unit testified that no fired cartridge casings would be recovered if the shooters used a revolver. N.T. 11/20/15 at p. 122.

Blackshear made the call at 4:22 p.m. on December 27, 2013, and gave the handset to the Defendant. The phone call was played at trial. Blackshear identified his voice. A redacted portion of the transcript was provided to the jury:

**Rodney Blackshear:** Yo. Look, look. I got to holler at you about something, right? But I need you to make this 3-way call for my man real fast; it's some important shit.

**Speaker:** Yo Fats.

**Recipient A:** Alright.

**Recipient B:** Who this?

**Rodney Blackshear:** Alright it's 267...

**Speaker:** It's Has [Defendant Hasan Harris] bro. Listen bro, listen to me bro.

**Recipient A:** Hold on...

. . .

**Rodney Blackshear:** 267-243-[Unintelligible] 243-5399

**Speaker:** Listen, you need to get the fuck out of here bro, like seriously; as soon as possible. [Unintelligible] Listen dog.

. . .

**Speaker:** Listen dog.

**Recipient B:** Something came back?

**Speaker:** The DNA that came back yours, bro. You need to go, right now.

**Recipient B:** Alright, alright. Don't talk all regular over the jack, bro. You know what I mean?

**Speaker:** Listen bro.

| | |
|---|---|
| **Recipient B:** | I'm just finishing from . . . I just came from being down there. |
| **Speaker:** | Listen bro. Stay from downtown. And . . . just fall back, bro. Fall the fuck back. |
| **Recipient B:** | Alright. Say no more, say no more, say no more. Other than that, how are you though? |
| **Speaker:** | Man, you know me, I'm standing tall, City Hall, baby! |

CW Exhibit 66. Recipient A's phone number was (215) 200-0150. Recipient B's phone number was (267) 243-5399. *Id.* Bradley Cakrane, systems administrator at Curran-Fromhold Correctional Facility (CFCF), testified that nine phone calls were placed from the Defendant's pin number at CFCF to the number (267) 243-5399. N.T. 11/21/14 at pp. 169-81.

## ANALYSIS

### Issue I

Defendant claims that the evidence was insufficient to support the jury's verdict of guilt of third degree murder because the Commonwealth failed to prove beyond a reasonable doubt that the Defendant was involved in the shooting death of Tyrel Washington.

In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the factfinder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere

suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."

*Com. v. Stokes*, 78 A.3d 644, 649 (Pa. Super. 2013), app. denied, 89 A.3d 661 (Pa. 2014) (citing *Com. v. Coon*, 695 A.2d 794, 797 (Pa. Super. 1997) (citations omitted)). In evaluating the sufficiency of the evidence, "the fact-finder is free to believe all, part, or none of the evidence presented." *Com. v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (en banc), app. denied, 95 A.3d 277 (Pa. 2014). Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions, they may not be disturbed. *Stokes*, 78 A.3d at 649.

Murder in the third degree is an unlawful killing with malice, but without the specific intent to kill. 18 Pa.C.S. § 2502(c); *Com. v. Street*, 69 A.3d 628, 631-32 (Pa. Super. 2013) (citations omitted). To establish the offense of third degree murder, the Commonwealth need only prove beyond a reasonable doubt that the defendant killed an individual, with legal malice, i.e. "wickedness of disposition, hardness of heart, wantonness, cruelty, recklessness of consequences, or a mind lacking regard for social duty." *Com. v. Devine*, 26 A.3d 1139, 1146 (Pa. Super. 2011) (citing *Com. v. Johnson*, 719 A.2d 778, 785 (Pa. Super. 1998), app. denied, 739 A.2d 1056 (Pa. 1999)).

Defendant argues that the Commonwealth failed to prove his identity as the shooter beyond a reasonable doubt "given the inconsistent and contradictory identification evidence and the results of [the] DNA analysis of various items of physical evidence recovered in the case."[5] An argument regarding the credibility of a witness' identification testimony goes to the weight of the evidence, not the sufficiency of the evidence. *Com. v. Griffin*, 65 A.3d 932, 939 (Pa. Super.) app. denied, 76 A.3d 538 (Pa. 2013). Furthermore, DNA evidence is never conclusive, but,

---

[5] Defendant does not contest there was sufficient evidence establishing malice.

rather, is probabilistic in nature, and its persuasiveness is properly a matter for the jury. *Com. v. Lyons*, 79 A.3d 1053, 1063 (Pa. 2013), cert. denied, 134 S. Ct. 1792, 188 L. Ed. 2d 761 (2014) (citing *Com. v. Crews*, 640 A.2d 395 (Pa. 1994)). Regardless, there is sufficient evidence to prove beyond a reasonable doubt that the Defendant was one of the shooters.

Two video cameras and four eyewitnesses' testimony combined to provide not only a strong identification, but also a complete timeline of the entire incident, tracking the Defendant's movements before, during, and after the shooting.

Video surveillance minutes before the shooting from a pole camera at 7th and Green Street captured the Defendant and alleged co-conspirator, Shaheed Black, riding bikes two blocks from the shooting, towards the location of the shooting, in clothing matching those identified as being worn by the shooters. Mikell Durant, who is seen in the video conversing with the males, identified himself and the two males on bikes as the Defendant and Black.

Eyewitnesses to the shooting testified that both shooters were riding bikes and wearing dark colored hooded sweatshirts. One of the shooters was wearing a sweatshirt with "Rest in Peace Wayne" on the back. Nathaniel Rogers testified that shortly after hearing shots fired, he observed two "nervous" young boys bike into the Marshall Square Apartments, and that one of the boys was wearing a sweatshirt that said "Rest in Peace." When shown crime scene photos, eyewitness Richard Ellis identified the bikes the shooters were riding and the "Rest in Peace Wayne" sweatshirt, both of which were recovered from that apartment complex in Penn Town.

Mikell Durant testified that the Defendant's friend, Wayne Ballard, was shot and killed in March 2011. Wayne's friends wore clothing commemorating his life. In fact, testimony at trial showed that the Defendant has "R.I.P. Wayne" tattooed on his chest. Furthermore, prison

10

telephone recordings showed that the Defendant called Shaheed Black to let him know that his DNA was found on evidence recovered from the crime.

Nathaniel Rogers testified that shortly after he observed the two boys ride into the Marshall Square Apartments, he then saw them running near 7th and Brown Street without the sweatshirts. This testimony was supported by video surveillance taken shortly after the shooting, which captured the Defendant walking in a white "wife-beater" and shorts near the 700 block of North 7th Street. The decedent's brother, Montel Washington, testified that he had known the Defendant for a long time. He identified the Defendant in that second video which was taken shortly after the shooting.

The direct and circumstantial evidence proving the identity of the Defendant as one of the shooters was compelling. Therefore, Defendant's claim is without merit.

**Issue II**

Defendant next contends that the verdict was against the weight of the evidence "given the inconsistent and contradictory identification evidence and the results of DNA analysis of various items of physical evidence recovered in the case."

"A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Com. v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). When reviewing a weight of the evidence claim, we consider the following:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the

11

credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence[,] do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Stokes*, 78 A.3d at 650-51 (citing *Com. v. Widmer,* 744 A.2d 745, 751-52 (Pa. 2000) (citations, quotation marks, and footnote omitted)). The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Com. v. Lewis*, 911 A.2d 558, 565 (Pa. Super. 2006) (citation omitted). A new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Com. v. Morales*, 91 A.3d 80, 91 (Pa. 2014), cert. denied, 135 S. Ct. 1548, 191 L. Ed. 2d 643 (2015).

Based on the foregoing analysis of the direct and circumstantial evidence, the verdict was not against the weight of the evidence.

## CONCLUSION

For the preceding reasons, the judgment of sentence of the trial court should be affirmed.

By the Court:

_Rose Marie DeFino-Nastasi_

Rose Marie DeFino-Nastasi, J.

12