**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Lamon STREET, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 13, 2013.
Filed May 3, 2013.

Suzanne M. Swan, Public Defender and Carrie L. Allman, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: BOWES, LAZARUS and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

This case is a direct appeal from the judgment of sentence imposed on Appellant after he was convicted of first-degree murder and related offenses. Appellant raises issues regarding the sufficiency and weight of the evidence, the admission of evidence and the legality of his sentence. We affirm his convictions but vacate his sentence and remand for resentencing.

On May 22, 2009, roughly eight to eleven persons congregated near the outside of a certain residence on Alpine Street in Pittsburgh. Those persons included Sofion Moore and his girlfriend, Shavaughn Wallace. Some thirteen gunshots were fired toward the group. When the shooting started, Wallace was inside a car. Moore warned her to lie down. While it is not clear to us if Wallace did so or if she tried to exit the vehicle, she was hit by gunfire. As a result, she and her unborn child died.

Shortly after the incident, Moore told police that he did not know who the shooter was. Later, however, he identified Appellant as the gunman based on a photo array shown to him by police. At Appellant's eventual trial, Moore first indicated he had not seen the shooter. After additional examination, Moore testified that he had seen Appellant firing the gun. Moore's testimony indicated Appellant approached from behind Moore and Moore then turned and saw him.

Some of the persons who had congregated on Alpine Street were members of a gang known as the Hoodtown Mafia. Appellant was associated with the Brighton Place Crips ("the Crips"), a rival gang. There had been various shootings between members of the two gangs leading up to May 22, 2009.

The day after the shooting, Appellant spoke with Dwayne Johnson who was associated with the Crips. Appellant told Johnson, "I did that shit around Hoodtown." N.T., 02/27/12, at 97. Johnson

---

* Retired Senior Judge assigned to the Superior Court.

testified that he interpreted Appellant's statement to mean that Appellant had shot Wallace. Appellant also told Johnson words to the effect that Appellant had been "off on pills and he didn't care." *Id.* at 98. The context of the testimony suggested that Appellant meant he was using pills at the time of the shooting. Johnson also testified that, based on his friendship with Appellant, Johnson knew that Appellant had, at times, used the drug Ecstasy.

In or around March 2010, Johnson and Appellant came into contact while they were in a federal correctional facility, both of them having been indicted in a federal case as members of the Crips. By that time, Appellant had also been charged with homicide in the instant case. The two of them discussed Appellant's homicide case. While they did so, Appellant indicated that, on the date of the shooting, he had been driven to the scene by another member of the Crips named Fifty. Appellant stated that he walked a certain distance, saw a group of people and started shooting. Appellant also explained that he had seen Moore in the group. Moreover, Appellant claimed that Moore could not have seen Appellant shooting because Moore had his back turned toward Appellant. Appellant also explained to Johnson that Wallace did not run during the incident but, instead, was beside a vehicle when Appellant shot her.

Johnson eventually pled guilty to federal charges. At some point, he agreed to testify in the present case. In return for his cooperation, the U.S. Attorney's Office moved to reduce his sentence and the assistant district attorney prosecuting Appellant's case agreed to testify for Moore in federal court with respect to his sentence. Additionally, his family received witness-relocation funds to move from Allegheny County.

Appellant presented alibi testimony from his former girlfriend, Dominique Benton. She claimed Appellant had been with her on the day of the shooting while they watched movies. On cross-examination, the Commonwealth asked Benton if, at some previous time, she had planned to be an alibi witness for another former boyfriend, apparently in an unrelated murder case. Appellant objected to the Commonwealth's question on relevance grounds; the court overruled the objection on the basis that the question was relevant to Benton's credibility.

Appellant was convicted of first-degree murder and related offenses after a non-jury trial. The court sentenced him to life imprisonment without the possibility of parole. Appellant later filed post-sentence motions claiming, *inter alia,* that he should receive a new trial because the verdict was against the weight of the evidence. The court denied his motions. Appellant filed this timely appeal.

In his first argument, Appellant argues the evidence was insufficient to support his first-degree murder conviction because the Commonwealth did not prove he had the specific intent to kill given his diminished capacity. More specifically, Appellant's position is that the evidence showed he was in a drugged condition during the shooting (*i.e.,* under the influence of Ecstasy) rendering him incapable of forming the requisite intent. For the following reasons, Appellant's argument lacks merit.

 To sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused is responsible for the killing; and (3) the accused acted with specific intent to kill. *Commonwealth v. Vandivner,* 599 Pa. 617, 962 A.2d 1170, 1176 (2009); 18 Pa.C.S.A. § 2502(a), (d). Third-degree murder does not require the specific intent to kill, though it

does require malice. *Commonwealth v. Roebuck*, 612 Pa. 642, 32 A.3d 613, 615 (2011); *Commonwealth v. Williams*, 602 Pa. 360, 980 A.2d 510, 525 (2009); 18 Pa. C.S.A. § 2502(a), (c), (d).

■ Pursuant to a diminished-capacity defense, a drugged condition on the part of the accused may reduce first-degree murder to third-degree murder by negating or precluding the element of specific intent. *Commonwealth v. Hutchinson* 611 Pa. 280, 25 A.3d 277, 312 (2011); 18 Pa. C.S.A. § 308. However, this defense is not made out merely by evidence of a drugged condition. *Hutchinson*, 25 A.3d at 312. Instead, the evidence must show the accused was, by virtue of that condition, overwhelmed to the point of having lost his faculties and sensibilities. *Id.* The significance of such evidence is for the factfinder, who is free to believe or disbelieve it. *Commonwealth v. Blakeney*, 596 Pa. 510, 946 A.2d 645, 653 (2008).

We have discussed our review of sufficiency claims in this way:

> ... [O]ur standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. We do not weigh the evidence or make credibility determinations. Moreover, any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.

*Commonwealth v. King*, 990 A.2d 1172, 1178 (Pa.Super.2010)(internal citations omitted).

■ The evidence upon which Appellant relies to demonstrate diminished capacity is Johnson's testimony that he knew Appellant to use Ecstasy and that Appellant indicated he was "off on pills and he didn't care." N.T., 02/27/12, at 98. Appellant reasons that, because the court apparently found Johnson credible, the court should have found Appellant was under the influence of Ecstasy.

We reject Appellant's position. Even assuming the court believed that Appellant had taken some type of drug prior to the shooting, there was no evidence indicating that drug—Ecstasy or not—overwhelmed Appellant to the point where he lost his faculties and sensibilities. There was certainly no expert testimony to that effect. Instead, Appellant points only to his comment to Johnson that Appellant "didn't care" during the incident. This ambiguous statement does not prove Appellant was incapable of having the specific intent to kill. Appellant's claim to the contrary fails.

Moreover, other evidence suggested Appellant was in control of his faculties and sensibilities. For example, when Appellant eventually related his memory of the incident to Johnson, Appellant recounted that a fellow gang member named Fifty had driven Appellant to the scene or to a spot near it. Appellant also explained that he walked a certain distance, saw a group of people, noticed that Moore was one of them and had his back to Appellant, began shooting, noticed that Wallace did not run, and then shot her. Appellant's recitation of these events suggest he was able to observe and retain facts and circumstances related to the shooting. This ability militates against a finding that his faculties and sensibilities were overwhelmed by a drugged condition when he fired the gun.

In short, Johnson's testimony could be taken to mean Appellant was in some sort

of drugged state at the time of the incident, but the factfinder, assessing the significance of that testimony in light of the entire record, could reasonably have found Appellant was capable of forming, and did form, the specific intent to kill. We certainly cannot say that the evidence was so weak and inconclusive that no probability of guilt could be based thereon. Thus, viewing all the evidence in the appropriate Commonwealth-favorable light, Appellant's sufficiency claim is meritless.

Appellant next wants us to find the trial court abused its discretion when it denied his motion for a new trial based on his claim that the verdict was against the weight of the evidence. This issue warrants no remedy.

▮ We review weight-related issues as follows:

> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.

> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one

we might have made in the first instance.

> Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

*Commonwealth v. West*, 937 A.2d 516, 521 (Pa.Super.2007)(internal citations omitted).

Appellant's brief points out that Moore vacillated, sometimes indicating he did not see who fired the gun and other times claiming the shooter was Appellant. The brief also notes that Johnson, receiving leniency in connection with his criminal case(s), had an interest in providing testimony helpful to the Commonwealth. Additionally, Appellant's argument highlights defense testimony: alibi evidence; testimony from a friend of Moore, Norman Terry, indicating that Moore stated he did not know who the shooter was; and testimony from another acquaintance of Moore, Craig Black, who said that Moore claimed police forced him to name Appellant as the shooter when, in fact, Moore did not know the gunman's identity.

Appellant's brief likewise notes testimony from Terrchell Little who stated that, despite being Appellant's cousin and despite being not far from the shooter during the incident, did not recognize the shooter as being Appellant. In his argument, Appellant acknowledges Little testified that she never saw the gunman's face.

▮ To be sure, Appellant illustrates arguable infirmities in the Commonwealth's case as well as evidence favorable to him. However, nothing Appellant says demonstrates anything so striking in the evidence as to lead us to conclude that the court, when evaluating and rejecting Ap-

pellant's weight claim, acted with bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. Having not persuaded us the court's ruling was abusive, Appellant cannot succeed on this issue.

Next, Appellant contends the trial court erred in allowing the Commonwealth to impeach his alibi witness, Benton, in an improper fashion. More particularly, Appellant's position is that the Commonwealth attacked Benton's character for truthfulness by asking her about a specific instance of conduct, *to wit,* an instance when she was allegedly listed as an alibi witness in an unrelated case. According to Appellant, the purpose of this cross-examination was to create the inference that Benton was "some sort of professional witness." Appellant's Brief at 37. Appellant maintains that the cross-examination was barred by Pa.R.E. 608(b)(1) which prohibits inquiry into specific instances of conduct for the purpose of challenging a witness's character for truthfulness on cross-examination.

■ At trial, Appellant objected to the Commonwealth's aforesaid cross-examination on the grounds of relevance. Appellant did not object on the theory that the cross-examination improperly referenced a specific instance of conduct. Accordingly, Appellant is now advancing a legal theory different than the one advanced at trial. Appellant may not do so. *See Commonwealth v. Thur,* 906 A.2d 552, 566 (Pa.Super.2006)(indicating an appellant may not propose a legal theory different than that raised in the trial court even if both theories support the same general issue that was preserved). Consequently, Appellant has waived his current theory and is not entitled to relief.

■ Lastly, Appellant asserts his sentence is illegal. He is correct. The record shows Appellant was under the age of eighteen at the time of this incident. On February 29, 2012, the trial court sentenced him to a mandatory penalty of life imprisonment without parole pursuant to 18 Pa.C.S.A. § 1102. In June 2012, the United States Supreme Court ruled that mandatory life imprisonment without parole for a person under the age of eighteen at the time of the offense violates the Eighth Amendment to the U.S. Constitution. *See Miller v. Alabama,* — U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012); *Commonwealth v. Batts,* — Pa. ——, 66 A.3d 286 (2013). Accordingly, Appellant's sentence is unconstitutional.

■ In *Batts,* the Pennsylvania Supreme Court indicated that the appellate remedy for the unconstitutional imposition of a mandatory life-without-parole sentence upon a juvenile situated similarly to Appellant is a remand for resentencing at which the court must consider the sentencing factors set forth in *Miller* and then resentence the appellant accordingly. *See Batts,* 66 A.3d at 296–97, 298–99. Therefore, we vacate Appellant's judgment of sentence and remand this case for resentencing in accordance with *Batts.*

Based on our foregoing discussion, we affirm Appellant's convictions but vacate his sentence. We remand this case for resentencing in accordance with *Batts.*

Convictions affirmed. Sentence vacated. Case remanded. Jurisdiction relinquished.