J-A19019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES ROBINSON | : | |
| | : | No. 547 EDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence July 7, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006076-2014

BEFORE:  BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 17, 2017**

Appellant Charles Robinson seeks review of the Judgment of Sentence entered after a jury found him guilty of First-Degree Murder.  He asserts claims of prosecutorial misconduct, among other things, and challenges the sufficiency and weight of the evidence.  We affirm.

On September 25, 2013, Robert Mack and Raheem Miller were sitting outside on the 5600 block of Beaumont Street in Philadelphia when Appellant rode by on a bicycle and shot three times at them.  Both men started running away, but Raheem, who had been shot in the chest, fell gasping for breath and died shortly thereafter.  The next day, Mack visited Raheem's parents and told them that Appellant had shot Raheem from his bicycle after pushing a little boy named Tayshawn out of the way.  Mack also told the victim's mother that he was going to go tell investigators what happened.  Later that day,

Mack met with homicide detectives and identified Appellant, whom he has known since elementary school, as the shooter, telling them that he had heard three gunshots and saw Appellant with a silver gun in his hand riding past on a bicycle before he and Raheem started running away. Mack also provided the officers with a written statement.

Five days after the shooting, Appellant called Philadelphia Police Officer Bryan Turner, the brother of one of Appellant's close friends, and told him: "Man, I didn't have a beef with the boy. That's not who I came around there for, and that everybody was blaming me for something that I didn't mean to happen." Trial Ct. Op, dated 7/29/16, at 6. Appellant agreed to tell his story to homicide detectives, and told Officer Turner he would contact him so they could go to the police station together. Appellant never contacted Officer Turner, and disappeared. Officers from the Fugitive Task Force and the U.S. Marshals conducted an extensive search, and finally located him six months later in Philadelphia. The Commonwealth charged Appellant with First-Degree Murder and firearms offenses.

At the preliminary hearing, Mack claimed he did not remember the shooting.

At Appellant's jury trial, the Commonwealth presented testimony from Mack, Raheem's mother, Officer Turner, Rashon Miller (a friend of Raheem's who lived on Beaumont Street near the shooting), the medical examiner, and several law enforcement officers. Mack testified that he was currently in prison on unrelated charges. After reviewing his written statement given to

detectives the day after the shooting, Mack claimed he was not present when the shooting took place and denied ever speaking with Raheem's parents. He also stated that he had lied at the preliminary hearing. On cross-examination, he testified that he had been high on drugs when Raheem was shot and had limited memory from that day. He also stated that he was under the influence of narcotics when police brought him in the day after the shooting and held him for 21 hours, handcuffed to a chair that was bolted to the floor, denied him food and medical treatment, and would not allow him to use the restroom at all. *See* N.T., 6/30/15, at 130-38. He also stated that he had made up the testimony identifying Appellant because he was a rival drug dealer. *Id*. at 97, 121-22.

Raheem's mother, Roxanne Williams, testified about, *inter alia*, Mack's visit to her house the day after Raheem's death and her conversation with him about Appellant having shot Raheem. *Id*. at 210-219.

Miller testified about, *inter alia*, speaking with Raheem and Mack on the steps the day of the shooting before walking down the street, turning the corner, and hearing gunshots. He testified that he ran back, saw Mack and Raheem running away, and saw Raheem collapse on the street. He testified that he called 911 using Raheem's telephone that was lying next to him on the ground. He also testified that he had never seen Mack selling drugs in the neighborhood. N.T., 7/1/15, at 7-21.

Detective Kevin Judge from the Fugitive Squad testified to the efforts that he and the squad made in an effort to apprehend Appellant after an arrest

warrant was issued on October 3, 2013.  N.T., 7/1/15, at 93-100.  He stated that the squad found Appellant on March 12, 2014, and arrested him without incident.  *See id*. at 100. Appellant presented character testimony from four people, including his mother and grandmother.  *See id*. at 180-229.

During deliberations, the jury asked the court for the statements Mack, Turner, and Miller had given to police officers which had been submitted into evidence during trial.  Over defense counsel's objection, the court granted the jury's request and the jury reviewed the statements in the jury room while it deliberated.

The jury found Appellant guilty of First-Degree Murder[1] and not guilty of the firearms offenses.  The court sentenced him to the mandatory term of life imprisonment without the possibility of parole.[2]  After the denial by operation of law of Appellant's Post-Trial Motion and amended motion, he timely appealed to this Court.

Both Appellant and the trial court complied with Pa.R.A.P. 1925.

## ISSUES ON APPEAL

Appellant raises and addresses the following five issues in his appellate Brief:

    1. Was the verdict of murder of the first degree not supported by sufficient evidence?

---

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 1102(a)(1).

- 4 -

2. Was the verdict of murder of the first degree against the weight of the evidence?

3. Did Judge Brinkley err in allowing favorable statements of key prosecution witnesses, Robert Mack, Rashon Miller[,] and Police Officer Turner, to go back and remain with the jury during deliberation, particularly without allowing retractions or contradictions to go back? Did this unduly emphasize favorable prosecution testimony and deny [Appellant] his right to a fair trial?

4. Did the Assistant District Attorney and Judge Brinkley allow improper cross-examination of Mr. Robinson's character witnesses about the nature of the current murder charge and [Appellant] being a fugitive, thereby tainting the jury and denying [Appellant] a fair trial?

5. Did the Assistant District Attorney err by giving improper statements of a personal opinion, vouching for the credibility of a witness, acting in an inflammatory manner by yelling at the defendant when stating at the defense table, by bring out incorrectly that [Appellant] was a drug dealer, and did this improper conduct taint the jury? Did the cumulative nature of the improper conduct of the Assistant District Attorney warrant a new trial?

Appellant's Brief at 6-7.

## SUFFICIENCY OF THE EVIDENCE

Appellant first avers that because Mack's testimony was "conflicting, contradictory and extremely speculative," the entire verdict is "based on … no more than surmise or conjecture." Appellant's Brief at 41, 45. After quoting *Commonwealth v. Karkaria*, 625 A.2d 1167, 1170 (Pa. 1993), Appellant contends that Mack's testimony "falls within the inherently unreliable standard," and because his testimony was the "cornerstone of the

Commonwealth's case," the verdict is not supported by sufficient evidence. *Id*. at 45.

In reviewing challenges to the sufficiency of the evidence, this Court must determine whether "the evidence introduced at trial and all reasonable inferences derived from that evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish beyond a reasonable doubt the elements of first-degree murder." **Commonwealth. v. Staton**, 38 A.3d 785, 789 (Pa. 2012) (citation omitted). Evidentiary sufficiency is a question of law, thus "our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Meals**, 912 A.2d 213, 218 (Pa. 2006).

First-Degree Murder is defined as an intentional killing, *i.e.,* a "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(a), (d). Thus, in order to prove First-Degree Murder, the Commonwealth must establish that: (1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and a specific intent to kill. The fact finder "may infer the intent to kill based upon the accused's use of a deadly weapon on a vital part of the victim's body." **Commonwealth v. Sanchez**, 36 A.3d 24, 37 (Pa. 2011) (citing 18 Pa.C.S. § 2501(a), 2502(a), (d) and related case law).

While challenges based on inconsistent testimony generally implicate the weight of the evidence, in **Karkaria**, **supra**, the Pennsylvania Supreme

Court observed the following with respect to testimony and sufficiency of the evidence.

> Normally, the evidence is deemed to be sufficient where there is testimony offered to establish each material element of the crime charged and to prove commission of the offense by the accused beyond a reasonable doubt. The question of credibility is left to the jury and the verdict will not be disturbed if the jury determines the evidence is worthy of belief.
>
> We have, however, made exception to the general rule that the jury is the sole arbiter of the facts where the testimony is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture.

*Karkaria*, 625 A.2d at 1170.

Contrary to Appellant's contention, we do not agree that the verdict was based on conjecture, or that Mack's testimony was "so inherently unreliable" as to render the verdict unsupportable. It is undisputed that Raheem died as a result of a bullet fired into a vital part of his body. With respect to the identification of Appellant as the shooter, the jury apparently believed Mack's statement made to police investigators within one day of the shooting. That statement was corroborated by testimony presented by both Raheem's mother and Raheem's neighbor, Miller. Although Mack stated in his recantations that he both could not remember the shooting and was not present at the shooting, the veracity of his statement to police was corroborated with credible evidence. Miller testified that he saw Mack and Raheem immediately after the shooting running away together, just as Mack described in his initial statement to the homicide investigator. Moreover,

- 7 -

Raheem's mother testified that within 24 hours of the shooting, Mack came to her home, told her Appellant was the shooter, and provided her with a version of events that matched what he told the police investigator later that same day.

Because Mack's initial statement was corroborated by other witnesses, we conclude that the verdict was not based on "inherently unreliable" evidence. Moreover, as discussed below, the mere fact that a witness recanted a statement that he had previously made to the police certainly does not render the evidence insufficient to support an appellant's conviction.

## WEIGHT OF THE EVIDENCE

Appellant argues that because Mack's identification testimony was contradictory, speculative, and conflicting, the verdict is not supported by the weight of the evidence. We disagree.

Our standard of review applicable to weight challenges is well-settled. "The decision whether to grant a new trial is within the trial court's discretion, and we review that decision under an abuse of discretion standard." *Commonwealth v. Strutt*, 624 A.2d 162, 164 (Pa. Super. 1993). "[A]buse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record." *Commonwealth v. Street*, 69 A.3d 628, 633 (Pa. Super. 2013) (citation omitted).

Where a convicted defendant files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court will not "grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice." *Id.* This Court, thus, does not "reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. . . . Instead, [we determine] whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance." *Id*. (citation omitted). The Pennsylvania Supreme Court has often recognized that:

> One of the least assailable reasons for granting [or denying] a new trial is the lower court's conviction that the verdict was [or was not] against the weight of the evidence and that new process was [or was not] dictated by the interests of justice. With reasons for this action given or appearing in the record, only a palpable abuse of discretion will cause us to overturn the court's action. In determining whether or not the grant of a new trial constituted an abuse of discretion, it is our duty to review the entire record.

*Commonwealth v. Brown*, 648 A.2d 1177, 1189–90 (Pa. 1994) (citation omitted).

It is axiomatic that the jury was free to evaluate both Mack's statement to police and his testimony at the trial recanting that statement, and free to believe all, part, or none of the evidence. *See Commonwealth v. Pitts,* 404 A.2d 1305 (Pa. 1979) (noting that a jury is free to believe all, part, or none of the evidence presented). It is not for this Court to reweigh the evidence and substitute its judgment for that of the fact-finder. *See Commonwealth v.*

- 9 -

*Gibson*, 720 A.2d 473, 480 (Pa. 1998) (observing that "[c]redibility determinations are strictly within the province of the finder of fact; therefore, an appellate court may not reweigh the evidence and substitute its judgment for that of the finder of fact.").

In the instant case, the evidence presented to the jury was not only Mack's statement and testimony. In addition to the corroborating testimony of Raheem's mother and Miller discussed *supra*, the Commonwealth presented other compelling evidence from which the jury could reasonably infer Appellant's guilt. This evidence included Appellant's incriminating telephone call to Officer Turner, in which he asked whether there were witnesses and suggested that he shot the wrong person,[3] as well as his flight from justice despite his telling Officer Turner that he would turn himself in to authorities. Based on this evidence, the jury's finding of guilt cannot be said to "shock one's conscience." Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's Motion for a new trial based on the weight of the evidence.

## EVIDENCE ALLOWED INTO JURY ROOM

In his third issue, Appellant avers that the trial court erred in granting the jury's request to have Mack's statement, Miller's statement, and Officer

---

[3] *See* N.T., 6/30/15, at 223-25, 247-49 (where Officer Turner reiterates that Appellant told him, "Man, I didn't have beef with the boy. That's not who I came around there for, and that everybody was blaming me for something that I didn't mean to happen").

Turner's statement provided to police investigators in the jury room during deliberations. Appellant's Brief at 35. He argues that this action was "extremely unfair" to Appellant because the court did not allow Mack's recantation testimony or any of the cross-examination of Turner, Mack, or Miller to go out to the jury. *Id*. at 52-53. The trial court aptly summarized the facts and procedural history relevant to its granting of the jury's request to view during deliberations prior witness statements, as follows:

> Specifically, the jury asked to see the prior statements to police from witnesses Robert Mack, Officer Bryan Turner, and Rashon Miller. (N.T. 7/2/15, p. 160-69). At trial, Robert Mack testified that he was not present when Raheem was shot. He further claimed that he was extremely high on drugs when he gave his statement to police. Without objection from defense counsel, the Commonwealth introduced Mack's prior inconsistent statement [given] to police into evidence, marked as Exhibit C-2. The prosecutor, Mr. O'Neill[,] then read the statement aloud, reading both the question and answer and then asking Mack whether the statement was accurate. (N.T. 6/30/15, p. 98-118). Mack's statement to police was read again in its entirety during Detective Mole's testimony, without objection from defense counsel, as Detective Mole was the homicide detective who interviewed Mack and recorded his statement. *Id*. at 177-191. Police Officer Bryan Turner testified at trial regarding his telephone conversation with Defendant. He later gave a statement to homicide detectives. This statement was introduced at trial as Exhibit C-11, without objection from defense counsel. Mr. O'Neill read portions of the prior consistent statement to Officer Turner and asked whether the information was correct. *Id*. at 227-49. Last, Rashon Miller testified at trial that he saw Mack and Raheem sitting together only a few moments before the shooting. Miller's statement to homicide detectives was also entered into evidence as Exhibit C-7, without objection from defense counsel. Mr. O'Neill read from the prior consistent statement and asked Miller whether the statement was accurate. (N.T. 7/1/15, p. 6-23).

Trial Ct. Op., dated 7/29/16, at 26-27.

- 11 -

Our standard of review of a challenge to the trial court's allowance of a jury's review of trial exhibits during deliberations is whether the trial court abused its discretion in permitting the jury access to such a document. *Commonwealth v. Fox*, 619 A.2d 327 (Pa. Super. 1993).

Pursuant to Pa.R.Crim.P. 646(A), "[u]pon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C)." Paragraph (C) prohibits the jury from having a transcript of any trial testimony, a copy of any written or otherwise recorded confession by the defendant, a copy of the information or indictment, and with exception, written jury instructions. Pa.R.Crim.P. 646(C). It is thus entirely within the trial court's discretion to allow or disallow such a request. *Commonwealth v. Dupre*, 866 A.2d 1089, 1102-03 (Pa. Super. 2005).

This Court has observed:

The underlying reason for excluding certain items from the jury's deliberations is to prevent placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not in the room with the jury. If there is a likelihood the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice *per se* and the error is harmless.

*Id.* at 1103 (quoting *Commonwealth v. Strong*, 836 A.2d 884, 888 (Pa. 2003).

A witness statement entered into evidence solely for the purpose of impeachment may not go back with the jury during deliberations. *Commonwealth v. Russell*, 322 A.2d 127 (Pa. 1974). However, a trial court

may properly allow witness statements entered as substantive evidence to go back with the jury if requested during deliberations. ***Commonwealth v. Parker***, 104 A.3d 17, 26 (Pa. Super. 2014).[4]

The trial court provided the following well-reasoned analysis in addressing Appellant's claim that record evidence countering those statements should have been sent back with the jury as well:

> All of these witnesses' statements were admitted as substantive evidence and not solely for purposes of impeachment. Indeed, only Mack's prior statement was inconsistent. The fact that the jury asked to see these particular witness statements showed that they were weighing the credibility of the witnesses' testimony during their deliberations. By viewing Mack's prior inconsistent statement to homicide detectives, where he identified Defendant as the shooter, the jury could weigh that version of events against Mack's live in-person testimony on the stand at trial. They could further corroborate, or find inconsistencies, with the version of events related by Officer Turner and Rashon Miller. All of this was well within the purview of the jury's role as fact-finder.
>
> . . . The jury is permitted to ask to view documents that will aid in their deliberations and it is within the trial court's sole discretion to decide whether to allow it. Nothing in Pa.R.Crim.P. 646(A) states that the trial court is under any obligation to make sure the jury receives additional exhibits from either party to counterbalance the specific exhibits requested. As this Court

_____

[4] In ***Parker***, a witness refused to identify the shooter at trial, but his prior statement identifying the shooter was introduced as substantive evidence and marked as an exhibit without objection. During deliberations, the jury requested the exhibit to review in the jury room, and the court allowed it over the defendant's objection. On appeal, this Court held that permitting the jury to view the statement during deliberations was not abuse of discretion because defense counsel did not object when it was entered into evidence and the jury's request "showed that it was weighing whether to believe his testimony at trial or his prior inconsistent" statement. 104 A.3d at 27. We also concluded that the jury gave the statement the same weight given to the witness's in-court testimony.

- 13 -

stated at trial, "I can't give them things that I think they should have. I'm not their mother. I don't tell them what they need. . . . Again, I'm going to give them what they asked for. If it needs to be redacted . . . it will be redacted. But if not, then it goes as is." (N.T. 7/2/15, p. 154). The jury was very specific with respect to which documents they wanted to see, and this [c]ourt responded very specifically to what they asked for and provided them with the exhibits as redacted by agreement between counsel. Thus, this [c]ourt did not abuse its discretion when it let prior police statements go back with the jury during deliberations at their request.

Trial Ct. Op., 7/29/16, at

We agree with the trial court's reasoning and its conclusion that it did not abuse its discretion in allowing the jury to have the witnesses' statements during deliberations upon the jury's request. Our conclusion is supported by the record and relevant law. *See Parker*, *supra*. Appellant is not entitled to relief on this issue.

**<u>CROSS-EXAMINATION OF CHARACTER WITNESSES</u>**

In his fourth issue, Appellant contends that the prosecutor, John P. O'Neill, Esq., engaged in improper cross-examination of three of his four character witnesses, which "undercut any presumption of innocence." Appellant's Brief at 65.

At trial, Appellant presented testimony from, *inter alia*, his grandmother, his mother, and his friend and "aunt," Tanya Pierce. Each testified that Appellant had a "good reputation in the community" as a "law-abiding, peaceful" person. *See* N.T., 7/1/15, at 181, 196, 217. On cross-examination, over Appellant's strenuous objections, the Commonwealth questioned

- 14 -

Appellant's grandmother about whether the fact that law enforcement had been searching for Appellant with an arrest warrant for murder affected her testimony about her personal knowledge of Appellant's reputation in the community as a law-abiding and peaceful person. N.T., 7/1/15 at 182, 193.[5] She testified that it did not. *Id*. at 193.[6]

Pursuant to Pa.R.E. 404, a criminal defendant is permitted to offer witnesses to testify as to the defendant's reputation in the community regarding a relevant character trait, such as his reputation as being a law-abiding person. Pa.R.E. 404(a)(2), 405(a). "Character does not become an actual element or issue in the case[; rather, it] is being used circumstantially for the suggested inference that the accused acted in conformity with his or her character." Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 404.08[2][a] (2017 ed. LexisNexis Matthew Bender). "Testimony about the witness's opinion as to the character or character trait of the person is not admissible." Pa.R.E. 405(a).

On cross-examination of the defendant's character witnesses, "the court may allow an inquiry into relevant specific instances of the person's conduct

---

[5] Significantly, the jury had already heard testimony from officers of the Fugitive Squad regarding Appellant's disappearance after speaking with Officer Turner about turning himself in.

[6] Although the prosecutor attempted to ask similar questions of Pierce and Appellant's mother, the court sustained defense counsel's strenuous objections, and the prosecutor was unable to reframe the questions appropriately. *See* N.T., 7/1/15, at 198-99, 217-21.

probative of the character trait in question." Pa.R.E. 405(a)(1). These inquiries are allowed "to test the accuracy of [the character witness's] testimony and the standard by which he or she measures reputation." *Commonwealth v. Kouma*, 53 A.3d 760, 769 (Pa. Super. 2012) (quoting *Commonwealth v. Fletcher*, 861 A.2d 898, 915-16 (Pa. 2004).

It is well-settled that Rule 404 evidence, as with all relevant evidence, may be excluded if its probative value is outweighed by the danger of unfair prejudice. Pa.R.E. 403. Evidence is considered "unfairly" prejudicial when it has "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 and Cmt. A court "is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand." *Kouma*, *supra* at 770.

After quoting the specific cross-examination questions the prosecutor asked the witnesses, the trial court provided the following apt analysis:

> None of these questions were improper or unduly prejudicial to [Appellant]. As stated above, the Commonwealth is permitted to cross-examine character witnesses regarding specific instances of misconduct that are probative to the character trait in question. Here, the Commonwealth asked about [Appellant's] status as a fugitive after the shooting. This information was not unduly prejudicial as it had already been introduced at trial. Detective Kevin Judge of the Fugitive Task Force, Homicide Unit, already had testified that he conducted a nearly six-month search for [Appellant], which included canvassing [Appellant's] neighborhood, visiting friends and relatives to ask about [Appellant's] whereabouts, distributing wanted posters featuring [Appellant's] photograph, taking out ads in the Daily News, and conducting surveillance at the homes of relatives. (N.T. 7/1/15,

- 16 -

p. 89-103).   Moreover, this was proper cross-examination of a character witness as [Appellant] made an issue of his alleged "law-abiding" character. . . . This tested the accuracy of each character witnesses' testimony and, as stated above, showed the jury the standard by which these witnesses measured "good" and "law-abiding" reputation.   Therefore, this [c]ourt properly permitted the Commonwealth to question three character witnesses regarding whether [Appellant's] fugitive status affected his "good" reputation in the community as it was proper impeachment, was not unduly prejudicial, and provided context for the jury.

Trial Ct. Op. at 30-31.

We agree with the trial court's analysis.  The trial court did not abuse its discretion in allowing the prosecutor to question the witnesses about whether information, that had already been presented to the jury, affected their testimony regarding Appellant's reputation in the community.  Accordingly, no relief is due on this issue.

## PROSECUTOR'S COMMENTS AT CLOSING ARGUMENT

In his final claim, Appellant alleges that the prosecutor "exceeded what was proper" in presenting his case to the jury.   Appellant's Brief at 68.  Specifically, he challenges statements and actions of the prosecutor in his closing argument, averring that they were expressions of personal opinion and inflammatory.  *Id*. at 68-70.[7]

---

[7] Appellant also claims that the prosecutor engaged in misconduct when questioning Mack because he (the prosecutor) "brought out that [] Mack was claiming that [A]ppellant was a rival drug dealer, therefore bringing in prior unrelated bad acts."  Appellant's Brief at 74 (citing N.T., 6/30/15, at 124). His objection at the time of trial was based on the introduction of prior bad acts,

- 17 -

When considering an allegation of prosecutorial misconduct, the question is "whether the defendant was deprived of a fair trial, not deprived of a perfect trial." ***Commonwealth v. LaCava***, 666 A.2d 221, 231 (Pa. 1995). We review claims of prosecutorial misconduct mindful of the following precepts.

> The Pennsylvania Supreme Court has stated that "[t]he essence of a finding of prosecutorial misconduct is that the prosecutor, a person who holds a unique position of trust in our society, has abused that trust in order to prejudice and deliberately mislead [the factfinder]." ***Commonwealth v. Pierce***, [645 A.2d 189, 197 (Pa. 1994)]. … Prosecutorial misconduct will justify a new trial where the unavoidable effect of the conduct or language was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict. If the prosecutorial misconduct contributed to the verdict, it will be deemed prejudicial and a new trial will be required.

_____

not on prosecutorial misconduct. Accordingly, this prosecutorial misconduct claim is waived.

Moreover, it was Mack himself who first testified that the reason he lied and told detectives that Appellant had shot Raheem was because Appellant was a competitor of Mack's "in . . . selling drugs." N.T., 6/30/15, at 97. Defense counsel did not object then. Nor did counsel object when Appellant agreed with the prosecutor that he "had some drug conflict business with [Appellant]" and "that's why [Mack] said [Appellant] was the one who murdered Raheem Williams." ***Id***. at 121. It was only when the prosecutor used the term "drug competitors" to ask Mack if that was the version he was now telling the jury that defense counsel objected on the grounds of bad acts evidence, and moved for a mistrial. ***See id***. at 124. The court sent the jury out of the courtroom, heard argument, and denied the motion, observing that testimony regarding Mack's allegations of Appellant's being a rival drug dealer had already been presented to the jury, and counsel, who is a seasoned defense attorney, should have objected earlier if he did not want the jury to consider it. ***See id***. at 127.

- 18 -

*Commonwealth v. Francis*, 665 A.2d 821, 824 (Pa. Super. 1995) (citations omitted). *See also Commonwealth v. Busanet*, 54 A.3d 35, 64 (Pa. 2012) (same).

As the Supreme Court has noted, "this is a relatively stringent standard against which [an] appellant must labor." *LaCava*, *supra*, at 231 (citation omitted). "The touchstone is the fairness of the trial, not the culpability of the prosecutor." *Commonwealth v. Cox*, 983 A.2d 666, 685 (Pa. 2009).

Although a prosecutor may comment on the credibility of a witness, "it is improper for a prosecutor to express a personal belief as to their credibility." *Commonwealth v. Sanchez*, 82 A.3d 943, 981 (Pa. 2013) (citing *Commonwealth v. Chmiel*, 889 A.2d 501, 545 (Pa. 2005)). However, a prosecutor is allowed to "make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments." *Id*. (citations omitted). Accordingly, "we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made." *Commonwealth v. Rolan*, 964 A.2d 398, 410 (Pa. Super. 2008). In addition, "[t]he effect of the prosecutor's remarks must be evaluated in the context and atmosphere of the entire trial." *Sanchez*, 82 A.3d at 981.

Finally, "[t]he prosecution, like the defense, is accorded reasonable latitude and may employ oratorical flair in arguing its version of the case to the jury." *Commonwealth v. Weiss*, 776 A.2d 958, 969 (Pa. 2001).

The Hon. Genece E. Brinkley thoroughly and appropriately analyzed each of Appellant's claims of prosecutorial misconduct in her Rule 1925(a) Opinion, with citation to the record and relevant case law. We, thus, adopt that portion of the Opinion as our own and affirm. **See** Trial Ct. Op. at 14-24 (concluding: **(1)** the prosecutor's statements during his closing argument were not his personal opinion as to Mack's credibility; rather, "he drew the jury's attention to a circumstance, namely state prison, which might affect Mack's credibility as a witness," and [the statements represented] "proper inferences from evidence adduced at trial … that Mack's incarceration may have affected his testimony on the stand and explain why he recanted his prior eyewitness account of the shooting," and constituted "fair response to defense counsel's repeated attacks on Mack's credibility during his own closing arguments." (**Id**. at 19-21); **(2)** the prosecutor did not offer his personal opinion that Appellant was guilty, or improperly bolster or personally vouch for Raheem's mother when he said she had motive to tell the truth and "she told you the truth." (**Id**. at 21). Rather, the prosecutor's comments were in fair response to defense counsel's closing argument in which he questioned Raheem's mother's credibility. (**Id**. at 21-22); **(3)** while "perhaps impolite since he pointed at someone, [the prosecutor's actions of] walking within 5 feet of Appellant, pointing to him while discussing Raheem's death, and saying 'He was taken because you had a beef with someone else and because of that, you are guilty of first-degree murder' were not "menacing or intimidating" and

"did not have the result of 'inflaming the passions of the jury' to the point they could no longer render a fair verdict."   (*Id*. at 23-24)).

In conclusion, none of Appellant's issues addressed in his appellate Brief warrant relief.  Accordingly, we affirm Appellant's Judgment of Sentence.

The parties are instructed to annex the trial court's Opinion dated July 29, 2016, to all future filings.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/17/2017