J-A04009-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COREY G QUINCY | : | |
| | : | |
| Appellant | : | |
| | : | No. 136 MDA 2025 |

Appeal from the Judgment of Sentence Entered December 23, 2024
In the Court of Common Pleas of Northumberland
County Criminal Division at No(s):  CP-49-CR-0000795-2022

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED APRIL 21, 2026**

Corey G. Quincy appeals from the judgment of sentence, an aggregate term of life imprisonment, entered in the Court of Common Pleas of Northumberland County after he was convicted of first-degree murder, aggravated assault, abuse of a corpse, recklessly endangering another person, possession of an instrument of a crime, and aggravated assault with a deadly weapon[1] at a jury trial. After careful review, we affirm.

We glean the following from the certified record. On the evening of April 4, 2022, a verbal and physical altercation involving Quincy and Rhonda Pearce ("Victim") occurred in a second-floor bedroom of the residence Quincy shared

_____

[1] 18 Pa.C.S.A. §§ 2501(a), 2702(a)(1), 5510, 2705, 907(a), and 2702(a)(4), respectively.

with his father at 403 South Vine Street in Shamokin. During the dispute, Victim sustained blunt force injuries, including a head contusion, a broken nose, and fractured teeth. When Victim threatened to call the police, Quincy pinned Victim to the floor and stabbed her at least six times, including in the neck and chest. After confirming that Victim was dead, Quincy dragged her body into another room where he left it for several days and covered a bloodstain on the carpet with a towel. Quincy then left the residence to acquire more drugs.

On April 7, 2022, Quincy's father, who was hospitalized at the time, contacted the Shamokin Police Department and asked officers to meet with him in person to discuss apprehensions he had regarding his son. On April 8, 2022, Chief Raymond Siko of the Shamokin Police Department spoke with Quincy's father, who expressed his concern that something had happened between Quincy and Victim on the second floor of his residence and that he believed Victim was dead. Officers responded to the residence and discovered Quincy sitting on the front porch. Officers explained that they were conducting a welfare check and asked Quincy if Victim was inside the residence. Quincy informed the officers that Victim was upstairs and granted the officers permission to enter the premises. Officers discovered a knife and Victim's body in a room on the second floor. Quincy confessed to killing Victim and was taken into custody where he was questioned further. In an audio recorded

interview, Quincy described his relationship with Victim and the events that led to Victim's death as follows:

> [Quincy]: I hadn't been doing dope for awhile and stuff. And we started hanging out with each other and we were doing dope together. And she was still hardcore in doing, you know, and I was just kind of starting to dabble again from hanging around with her. Anyhow, she was, you know, freaking out about wanting to get more dope, and this and that. And she expected me to come up with a way to get more drugs. And, you know, I didn't really have a way. At [that] point I was flat broke. And she started flipping out. And we were getting into an argument about it. And we started screaming at each other and started getting violent, you know. [I]t just broke down really bad. And I went up and punched her in the face and, you know, I just started attacking her. And then ... she was going to call the cops on me while I was stabbing her. I did something horrible and irrational. It all happened in a matter of 30 seconds or less, you know. And I just—I snapped. And I couldn't control myself and I did something horrible and irrational.
>
> I'm not in denial of what I did at all. I feel—I can't tell you how ashamed I am and how much guilt and remorse I feel just—I just—I did something terrible. And I can't take it back.
>
> * * *
>
> [Officer]: [Was Victim] considered a girlfriend?
>
> [Quincy]: She was trying—she kept on saying she was my girlfriend. She uses it to manipulate me. She would tell me she was my girlfriend. Then she would go out and she would prostitute herself for drugs.
>
> [Officer]: Okay.
>
> [Quincy]: And then whenever she wanted something from me, she would come back around and try to be my girlfriend again, playing it—you know.
>
> * * *
>
> [Officer]: You said you used some kind of knife or something?

[Quincy]:   I mean, there was this sword—I imagine you probably saw it.

[Officer]:   Yeah, I wasn't at the house yet. So, it was like a sword?

[Quincy]:   It was a sword basically.

[Officer]:   Collector's item?

[Quincy]:   Just, I mean just a large sword, pretty sharp.

[Officer]:   How long was it roughly?

[Quincy]:   Like this long.

[Officer]:   About three feet?

[Quincy]:   Enough for it to go directly like through her—her chest and impale her. I mean it was horrible.

N.T. Trial, 10/10/24, at 45-47, 49-50 (unnecessary capitalization omitted). Quincy was charged with an open count of criminal homicide in addition to the above offenses, and the matter proceeded to a jury trial on October 10, 2024.

At trial, the Commonwealth presented the testimony of five witnesses and introduced various exhibits, including the audio recording of Quincy's confession. Quincy testified in his own defense and admitted to killing Victim. The defense proceeded on the theory that, due to Quincy's drug addiction and Victim's provocation, Quincy lacked the requisite level of culpability to be convicted of first-degree murder. Accordingly, prior to deliberations, the court instructed the jury on both voluntary intoxication and provocation. The jury convicted Quincy of all offenses, including the open count of criminal homicide,

for which it found him guilty of first-degree murder. On December 23, 2024, the court imposed a mandatory sentence of life imprisonment for Quincy's first-degree murder conviction and concurrent sentences on all remaining counts. Quincy timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). On March 13, 2025, the trial court entered a statement in lieu of filing an opinion pursuant to Pa.R.A.P. 1925(a).

On appeal, Quincy presents the following issue for our review:

> [Whether the] judgment was against the weight and/or sufficiency of the admissible evidence as to proof of the legal element(s) of the crime of murder in the first degree necessary for a conviction under 18 Pa.C.S.A §§ 2501(a) & 2502(a) in this case[?]

Appellant's Brief, at 7 (unnecessary capitalization and citations omitted).

Quincy claims that the jury's guilty verdict on the count of first-degree murder is against the weight and sufficiency of the evidence. As a preliminary matter, we must determine if these claims are properly before us.

In accordance with our Rules of Criminal Procedure, a challenge to the weight of the evidence must be properly preserved in the trial court as follows:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
>> (1) orally, on the record, at any time before sentencing;
>>
>> (2) by written motion at any time before sentencing; or
>>
>> (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). "An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim." ***Commonwealth v. Jurray***, 275 A.3d 1037, 1047 (Pa. Super. 2022) (citations omitted).

Our review of the record confirms that Quincy did not raise a challenge to the weight of the evidence orally or by written motion at any time before sentencing or in a post-sentence motion. ***See*** Pa.R.Crim.P. 607(a). Because Quincy failed to properly preserve a challenge to the weight of the evidence before the trial court, his challenge was not properly preserved for our review. ***See Jurray***, 275 A.3d at 1047.

Likewise, Quincy has not properly preserved his sufficiency challenge for our review where he failed to specify, in his Rule 1925(b) statement, "the element or elements upon which the evidence was insufficient" to sustain his first-degree murder conviction. ***Commonwealth v. McFarland***, 278 A.3d 369, 381 (Pa. Super. 2022) (citations omitted); ***see*** Concise Statement of Errors Complained of on Appeal, 2/13/25, at ¶ 1. Accordingly, Quincy's sufficiency challenge is waived on this basis. ***See McFarland***, 278 A.3d at 381. Moreover, even if Quincy's challenge to the sufficiency of the evidence were properly preserved, it would not merit relief.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In

addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Robinson*, 348 A.3d 291, 297 (Pa. Super. 2025)

(citations omitted).

An individual commits first-degree murder when he intentionally kills another human being; an intentional killing is defined as a "willful, deliberate and premeditated killing." 18 Pa.C.S.A. §§ 2501, 2502(a), (d). To sustain a conviction for first-degree murder, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the accused was responsible for the killing; and (3) the accused acted with malice and a specific intent to kill. Specific intent may be formed in an instant, and it can be discerned from the conduct and attending circumstances that show the perpetrator's state of mind.

A factfinder may presume the intent to kill based on the accused's use of a deadly weapon on a vital part of the victim's body or in the general area in which vital organs are located. The deadly weapon presumption is a presumption of fact founded on human experience, since one does not normally use a deadly weapon on a vital part of another's body unless he intends to kill. As a presumption of fact, the deadly weapon presumption is nothing more than a *prima facie* inference of intent.

*Commonwealth v. Newton*, 318 A.3d 133, 139 (Pa. Super. 2024) (case

citations omitted). Our Supreme Court has further clarified that "[t]he

intimacy involved in stabbing one's victim to death clearly indicates malice

and specific intent." ***Commonwealth v. Ballard***, 80 A.3d 380, 391 (Pa. 2013) (citation omitted).

Quincy contends that the Commonwealth's evidence was insufficient because his testimony concerning his drug use and addiction established a diminished capacity defense, and therefore, he lacked the requisite mental state to sustain a first-degree murder conviction. ***See*** Appellant's Brief, at 12. To support his argument, Quincy specifically relies upon the following testimony elicited by defense counsel when Quincy took the stand at trial:

> Q.     So the victim in this case, Ms. Rhonda Pearce, how long had you known her when these events happened?
>
> A.     I had known her for about two or three years.
>
> *     *     *
>
> Q.     Mr. Quincy, do you recall the day this incident occurred when Rhonda died?
>
> A.     Yes. I recall details of it. ...
>
> Q.     And had you been using drugs that day consistent with what you just testified was your drug usage in that time?
>
> A.     Yes, pretty much.
>
> Q.     Had she been using drugs?
>
> A.     Yes.
>
> Q.     And do you recall if you generally had been getting along that day or not?
>
> A.     We were getting along pretty good. We just—we just got into an argument and I blacked out.
>
> *     *     *

Q. Do you remember punching or hitting her?

A. I know I attacked her. I remember being so angry, so full of rage like that I blacked out.

\* \* \*

Q. Mr. Quincy, did you ever intend to kill Ms. Pearce?

A. No, I would have no motivation to kill her. She was a friend to me. She wasn't like a lover to me, or somebody that was like— like a partner to me. You know what I mean? It wasn't like we were in that kind of powerful relationship where we revolved around each other, you know. At least that is the way I viewed it. But I had no motivation to kill her. I wouldn't—why would I hurt somebody that didn't do anything to me, and that didn't owe me nothing. It didn't make no sense. I can't justify my actions.

N.T. Trial, 10/10/24, at 86, 92-93, 94, 98; **see** Appellant's Brief, at 12-13.

Without any further explanation or analysis, Quincy concludes:

The failure of the jury to properly apply the instructions given by the Northumberland County PA Court of Common Pleas under the standards set forth in the Pennsylvania Rules of Criminal Procedure as to … sufficiency of the evidence of lack of malicious intent to commit these crime(s) in light of the above uncontradicted testimony presented at trial constitutes reversible legal error warranting a new trial in this case.

Appellant's Brief, at 13, 14 (citations omitted).

Our Supreme Court has explained that

a defense of diminished capacity grounded in voluntary intoxication is a very limited defense, which does not exculpate the defendant from criminal liability, but, if successfully advanced, mitigates first-degree murder to third-degree murder. The mere fact of intoxication is not a defense; rather, the defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised by voluntary intoxication that he was unable to formulate the specific intent to kill. In other words, to prove a voluntary intoxication defense, the defendant must show

that he was overwhelmed to the point of losing his faculties and sensibilities. Evidence that the defendant lacked the ability to control his actions or acted impulsively is irrelevant to specific intent to kill, and thus does not constitute support of a voluntary intoxication defense.

***Commonwealth v. Bardo***, 105 A.3d 678, 716 (Pa. 2014) (citations and quotation marks omitted). Furthermore, the significance of diminished capacity evidence is to be determined by the factfinder, "who is free to believe or disbelieve it." ***Commonwealth v. Street***, 69 A.3d 628, 632 (Pa. Super. 2013) (citation omitted).

Relying on the same testimony, Quincy further contends that the evidence was insufficient to sustain his first-degree murder conviction because he presented evidence of provocation at trial, which supported a conviction for voluntary manslaughter. ***See*** Appellant's Brief, at 12. Our Criminal Code defines the offense of voluntary manslaughter, in pertinent part, as follows:

> (a) General rule.—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
>
> (1) the individual killed[.]

18 Pa.C.S.A. § 2503(a)(1). "[T]he test for determining whether there was adequate provocation is whether a reasonable man, confronted with a particular series of events, became impassioned to the extent that his mind was incapable of cool reflection." ***Commonwealth v. Anderson***, 323 A.3d 744, 754 (Pa. 2024) (internal quotation marks and citation omitted).

- 10 -

Even if his sufficiency challenge were properly preserved, Quincy would not be entitled to relief. In his brief, Quincy has not even attempted to establish that "his cognitive abilities of deliberation and premeditation were so compromised by voluntary intoxication that he was unable to formulate the specific intent to kill" or that "he was overwhelmed to the point of losing his faculties and sensibilities." *See Bardo*, 105 A.3d at 716; Appellant's Brief, at 11-14. Similarly, Quincy fails to identify any evidence other than the self-serving statement he made at trial concerning an argument that arose between Victim and himself to support his suggestion that his act of stabbing Victim was a product of "a sudden and intense passion resulting from serious provocation." *Anderson*, 323 A.3d at 754. Moreover, Quincy does not even attempt to explain how a reasonable man, confronted with his particular argument with Victim, would become so impassioned that his mind would be "incapable of cool reflection." *Id.*

Rather, at trial, the Commonwealth's evidence established that Quincy, by his own admission, killed Victim by stabbing her in the chest. *See* N.T. Trial, 10/10/24, at 45-47, 50, 93-94, 96, 100-01, 103. Dr. Edward Mazuchowski, an expert in the field of forensic pathology, testified that the stab wound to Victim's chest injured her ribs and right lung and constituted a rapidly fatal injury. *See* N.T. Trial, 10/10/24, at 79. Dr. Mazuchowski further explained that when a rapidly fatal injury is untreated, "an individual will die within seconds or minutes of sustaining that wound." *Id.* Notwithstanding the

trial court's voluntary intoxication and provocation jury instructions, the Commonwealth introduced sufficient evidence "to allow the jury to infer that [Quincy] acted with malice and the specific intent to kill" by establishing that he used a deadly weapon on a vital part of Victim's body. ***Anderson***, 323 A.3d at 754. It was within the province of the jury, as factfinder, to believe all, part, or none of Quincy's evidence concerning voluntary intoxication and provocation and to weigh this evidence against the presumption of intent to kill. ***See Robinson***, 348 A.3d at 297; ***Street***, 69 A.3d at 632. Therefore, the Commonwealth's evidence was sufficient to support Quincy's first-degree murder conviction where it established that: (1) Victim was unlawfully killed; (2) Quincy was responsible for the killing; and (3) Quincy acted with malice and a specific intent to kill. ***See Newton***, 318 A.3d at 139.

For the foregoing reasons, Quincy is not entitled to his requested relief. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/21/2026

- 12 -