J-S58004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GROVER HERMON LYONS | : | |
| | : | |
| Appellant | : | No. 1790 WDA 2018 |

Appeal from the Judgment of Sentence Entered July 24, 2018
In the Court of Common Pleas of Erie County
Criminal Division at No(s):  CP-25-CR-0001200-2017

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:               **FILED DECEMBER 20, 2019**

Grover Hermon Lyons appeals from the judgment of sentence entered

in the Erie County Court of Common Pleas on July 24, 2018, following his

conviction of one count of voluntary manslaughter, two counts of aggravated

assault, one count of possession of a weapon, one count of recklessly

endangering another person ("REAP"), one count of tampering with or

fabricating physical evidence, and one count of flight to avoid apprehension.[1]

For these offenses, Lyons received an aggregate sentence of 90 to 180 months

of incarceration.[2] On appeal, Lyons challenges sufficiency of the evidence,

---

[1] *See* 18 Pa.C.S.A. § 2503(a)(1); 18 Pa.C.S.A. §§ 2502(a)(1), 2502(a)(4); 18 Pa.C.S.A. § 907(b); 18 Pa.C.S.A. § 2705; 18 Pa.C.S.A. 4910(1); and 18 Pa.C.S.A. § 5126(a), respectively.

[2] The one REAP and two aggravated assault charges merged with voluntary manslaughter. Moreover, the sentences for possession of a weapon and tampering with or fabricating physical evidence were made concurrent with the voluntary manslaughter and flight to avoid apprehension offenses.

weight of the evidence, the discretionary aspects of his sentence, and the demographic composition of the jury that adjudicated his guilt. In finding none of his issues to be meritorious, we affirm the judgment of sentence.

In the early morning hours of December 31, 2016, Lyons, supported by another individual, Darrel Johnson, and the victim engaged in some sort of physical altercation inside of a bar in Erie, Pennsylvania. That establishment checked people for weapons upon entrance, and there is no evidence that any of the combatants brandished any weapons during the altercation.

After the fight, the victim left the building. Sometime later, Lyons and Johnson left the building from another exit together. However, this quarrel reignited when Lyons and Johnson walked down the street in the direction of both Johnson's vehicle as well as the victim and his vehicle. Eventually, both Lyons and the victim fired guns at one another.[3]

In the melee, Johnson was hit by a bullet fired by the same model of gun as the victim's gun. After police officers arrived at the scene, the victim was found dead beside a vehicle with a gunshot wound to the chest.

---

[3] The record is unclear as to when Lyons acquired the weapon used to kill the victim. At trial, Johnson did not recall if Lyons had a weapon on him that night. **See** N.T., 5/16/18, at 89-90. In contrast, Lyons indicated that it was Johnson's weapon that he picked up after Johnson dropped it during the firefight. **See** N.T., 5/17/18, at 166. The Commonwealth argued, circumstantially through a timeline established via a video, that Lyons obtained the weapon from the vehicle he arrived in, which was being driven by Lyons's sister and then had it on his person while walking toward the victim. In any event, it is undisputed that Lyons fired the shot that killed the victim.

Immediately following this incident, Lyons traveled to Detroit, Michigan, which is where he was apprehended.

At trial, Lyons was found guilty of seven offenses and sentenced to 90 to 180 months of incarceration. Lyons filed a timely post-sentence motion, which was denied by operation of law pursuant to Pa.R.Crim.P. 720(A)(3)(a) after 120 days elapsed from the motion's filing date. Lyons then filed a timely notice of appeal, and both Lyons and the trial court have complied with the dictates of Pa.R.A.P. 1925.

In his appeal, Lyons presents four issues for our review:

1) Did the Commonwealth present insufficient evidence to sustain each of Lyons's convictions and the testimony on the essential issue of justification (self-defense and defense of others) was so overwhelming that the findings of guilt were based on mere conjecture and speculation?

2) Did the trial court commit reversible error when it denied Lyons's post-sentence request for relief on weight of the evidence grounds?

3) Did the trial court commit reversible error in that the sentence imposed was manifestly extreme and clearly unreasonable and not individualized as required by law?

4) Did the fact that the age of the jury panel during the *voir dire* process consisted of individual who were so much older than Lyons constitute a violation of Lyons' right to a jury trial?

**See** Appellant's Brief, at 2.

Lyons's first argument is based on his belief that he shot the victim in justifiable self-defense or in defense of others. Therefore, according to Lyons,

the evidence proffered by the Commonwealth at trial was insufficient to sustain each of his convictions. *See id*., at 6.

> In reviewing a challenge to the sufficiency of the evidence, we:
>
> must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner, and we must determine if the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. This Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed. Moreover, a jury may believe all, some or none of a party's testimony.

*Commonwealth v. Burns*, 765 A.2d 1144, 1148 (Pa. Super. 2000) (citations omitted). "The evidence established at trial need not preclude every possibility of innocence[.]" *Commonwealth v. Brown*, 52 A.3d 320, 323 (Pa. Super. 2012). "Any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Vargas*, 108 A.3d 858, 867 (Pa. Super. 2014) (*en banc*). Moreover, it is not within our purview to reweigh the evidence or substitute our own judgment for that of the factfinder. *See Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011). Further, to find one guilty of a crime, the evidence may be entirely circumstantial so long as such evidence connects that individual to the crime beyond a reasonable doubt. *See id*.

> As our Supreme Court has explained:
>
> To prevail on a justification defense, there must be evidence that the defendant (a) ... reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary

- 4 -

to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat.

*Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012) (citations and internal quotation marks omitted). "A defendant's subjective state of mind does not establish the objective factor of the reasonableness of his belief." *Id.* at 1125. Further, it is for the trier of fact to determine whether an individual's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat. *See Commonwealth v. McClendon*, 874 A.2d 1223, 1229-30 (Pa. Super. 2005).

When an individual claims self-defense or defense of others, both of which are subsumed under the justification defense, the Commonwealth has the burden to prove beyond a reasonable doubt that the killing was not committed in self-defense or in defense of others.

> In order to disprove self-defense [or defense of others], the Commonwealth must prove beyond a reasonable doubt one of the following elements: (1) that the defendant did not reasonably believe it was necessary to kill in order to protect himself [or others] against death or serious bodily harm, or that the defendant used more force than was necessary to save himself [or others] from death, great bodily harm, or the commission of a felony; (2) that the defendant provoked the use of force; or (3) that the defendant had a duty to retreat and that retreat was possible with complete safety. *See* 18 Pa.C.S.A. § 505(b)(2). If the Commonwealth establishes any one of these three elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection [or protection of others] is at issue.

*Burns*, 765 A.2d at 1149 (some citations omitted).

- 5 -

Lyons maintains that even viewing the evidence and all reasonable inferences drawn therefrom in a favorable light to the Commonwealth as the verdict winner, such evidence is "equally consistent with [Lyons's] innocence as it is with guilt." Appellant's Brief, at 7. Lyons presents a series of assertions, which he frames as uncontradicted, in his attempt to demonstrate the validity of his justification defense:

1) The victim instigated the fight via a physical altercation inside of the bar;

2) Lyons, having arrived earlier and also having left later than the victim, had no way of knowing where the victim would be after leaving the bar;

3) The victim, upon leaving the bar, ran to his vehicle to obtain a firearm;

4) Lyons left the bar and walked normally toward Johnson's vehicle;

5) The initial shot came from the victim, where the intended target was likely Johnson given some dispute between Johnson and the victim over a girlfriend;

6) A bullet fired by the victim hit Johnson;

7) Lyons attempted to retreat as best he could.

*See* Appellant's Brief, at 9-12.

Although the record is replete with conflicting and unclear testimony, we assume without actually deciding that the first six of Lyons's assertions are true. However, based on the testimony elucidated at trial, Lyons's contention that he attempted to retreat as best as he could is directly refuted by Johnson's testimony:

[The bar] ended up letting [the victim] out. Prior to letting [the victim] out, like five to seven minutes later, they ended up letting [Lyons and me] out on Buffalo Road. And as [Lyons and I were] walking up the street[], we see - - we didn't know exactly where [the victim] had parked or anything. You know, I was just walking to my car. And we see [the victim], he's in the car. . . . [H]e's scrambling around for [his gun], *we just kept walking*, you hear what I'm saying[?]

So when he turned, he had the gun. And I grabbed [Lyons] by his arm, like, whoa, he [has] a gun. So he was still on the other side [of the street]. So I'm like, we can just walk up the street, you know what I'm saying, and get to our car. As we were walking up, that's when [the victim], he turned around[,] and he fired at us. So I grabbed [Lyons] and we ducked.

N.T., 5/16/18, at 34 (emphasis added). Accordingly, the jury could have found beyond a reasonable doubt that Lyons violated his duty to retreat, which would therefore eliminate Lyons's self-defense or defense of others claim. **See** 18 Pa.C.S.A. § 505(b)(2).

Based on this testimony, the jury could have concluded that, after seeing the victim brandish a weapon, the reasonable course of action for Lyons and Johnson was to turn around and walk back toward the bar in order to find safety. Other evidence supported this inference circumstantially: 1) Lyons and Johnson were aware of the prior hostility between them and the victim, as it had only happened a few minutes prior, therefore establishing a higher likelihood that some sort of weaponized confrontation would occur; and 2) the vehicle Lyons came in, the vehicle his sister was driving, still remained in the parking lot of the bar, and the sister remained in or around the bar prior to and during the gunfire, **see** N.T., 5/17/18, at 134, 143-44, 148-49 (indicating

that Lyons arrived in his sister's vehicle, could not find his sister once he left the bar, and eventually found his sister after the firefight, using her vehicle to leave the scene). Instead of turning around, Lyons and Johnson continued towards the victim, cognizant of the victim's weapon and accordingly placed themselves directly in danger.

As the only element Lyons is claiming to be insufficient was the Commonwealth's burden to demonstrate beyond a reasonable doubt that Lyons was not justified in his shooting of the victim, we find that his insufficiency argument does not warrant any relief. To reiterate, we may not reweigh the evidence or substitute our judgment for that of the factfinder even if we would have come to a different conclusion. However, Johnson's testimony, which the factfinder was free to believe or disbelieve, augmented by other circumstantial evidence highlighted above, supports a finding that Lyons breached his duty to retreat beyond a reasonable doubt.

Lyons's second argument is a claim the trial court abused its discretion when it failed to grant him a new trial based on his challenge to the weight of the evidence at trial. He suggests that it was against the weight of the evidence for the jury to not find his justification defense valid.

> A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but contends that the verdict was against the weight of the evidence. An appellate court may review the trial court's decision to determine whether there was an abuse of discretion, but it may not substitute its judgment for that of the lower court. Credibility issues are decided by the jury and appellate courts rarely overturn jury factual findings that are based on credibility determinations. Indeed, an appellate court

should not entertain challenges to the weight of the evidence since our examination is confined to the "cold record." Our Court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. Thus, we are confined to review if the trial court abused its discretion.

***Burns***, 765 A.2d at 1149-50 (citations and some quotation marks omitted).

Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

***Commonwealth v. Street***, 69 A.3d 628, 633 (Pa. Super. 2013) (citation omitted).

Here, Lyons merely quotes our standard of review for a weight of the evidence challenge and then summarily and erroneously concludes that "the Commonwealth's case was clearly *insufficient*." Appellant's Brief, at 15 (emphasis added). Essentially, Lyons, as a second bite at the apple, is challenging that the evidence was insufficient for the Commonwealth to have demonstrated the invalidity of Lyons's justification defense beyond a reasonable doubt. Therefore, given the lack of legal authority to support his weight of the evidence contention and dearth of any kind of factual or argumentative development of this issue, we conclude he has waived his weight of the evidence challenge. ***See Commonwealth v. Williams***, 959 A.2d 1252, 1258 (Pa. Super. 2008); ***see also Commonwealth v. Birdseye***, 637 A.2d 1036, 1039-40 (Pa. Super. 1994) ("Because [appellants] failed to distinguish between their sufficiency and weight of the evidence claims and

presented no argument regarding the weight of the evidence, we deem their weight of the evidence issue waived."); Pa.R.A.P. 2119(a) (identifying that an argument must be "followed by such discussion and citation of authorities as are deemed pertinent").

Additionally, Appellant's Pa.R.A.P. 1925(b) statement does not include a challenge to the weight of the evidence. **See** Defendant's Statement of Matters Complained of on Appeal as per Rule 1925(b); **see also** Pa.R.A.P. 1925(b)(3)(iv) ("[A]ny issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived.). However, even if we were not to find this issue waived, there is simply no basis to conclude that the verdict here, predicated on multiple sources and an evidentiary record that establishes the elements of Lyons's crimes, shocks one's sense of justice or is somehow the byproduct of bias, partiality, prejudice, ill-will, manifest unreasonableness, or a misapplication of the law. Accordingly, Lyons's second issue is due no relief.

Next, Lyons suggests that his sentence was manifestly excessive, clearly unreasonable, and not individualized. **See** Appellant's Brief, at 15. "A challenge to the discretionary aspects of sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." **Commonwealth v. Lamonda**, 52 A.3d 365, 371 (Pa. Super. 2012) (*en banc*) (citation omitted). Thus, before we may consider the merits of Lyons's sentencing issue, he "must invoke this Court's jurisdiction by

satisfying a four-part test." ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010). The test is:

> the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted).

"A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citation and internal quotation marks omitted). "Only if the appeal satisfies these requirements may we proceed to decide the substantive merits of Appellant's claim." ***Commonwealth v. Luketic***, 162 A.3d 1149, 1159-60 (Pa. Super. 2017) (citation omitted).

Here, Lyons filed both a post-sentence motion challenging the discretionary aspects of his sentence and, thereafter, a timely appeal with this Court. In addition, Lyons has included a 2119(f) statement in his brief. ***See*** Appellant's Brief, at 3-4. Therefore, we proceed to our analysis of whether he has raised a substantial question for our review.

The existence of a substantial question must be determined on a case-by-case basis. ***See Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 545

(Pa. Super. 1995). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa. Super. 2012) (citations and internal quotation marks omitted).

In his 2119(f) statement, Lyons asserts that "his sentence was manifestly excessive and clearly unreasonable because it was not individualized to meet his needs[,] and he was not given proper credit for time served prior to sentencing." Appellant's Brief, at 4. "A claim that a sentencing court … sentenced a defendant without taking into account his or her character and background therefore raises a substantial question that the sentence is inappropriate under the Sentencing Code." *Luketic*, 162 A.3d at 1162. Therefore, Lyons's argument raises a substantial question, which we will now review on the merits.[4]

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Bricker*, 41 A.3d 872, 875 (Pa. Super. 2012) (citation omitted). "In order to establish that the sentencing court

---

[4] After mentioning it in his 2119(f) statement, Lyons does not make any further reference to the argument that he was not given proper credit for time served prior to sentencing. Therefore, we consider that assertion waived.

abused its discretion, [the defendant] must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **Commonwealth v. Williams**, 69 A.3d 735, 741 (Pa. Super. 2013) (internal quotation marks and citation omitted). "The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." **Id.**, at 740 (internal quotation marks and citation omitted). To determine whether the trial court made the proper considerations during sentencing, "an appellate court must, of necessity, review all of the judge's comments." **Commonwealth v. Bethea**, 379 A.2d 102, 106 (Pa. 1977); **see also Commonwealth v. Ritchey**, 779 A.2d 1183, 1187 (Pa. Super. 2001) ("As this Court has stated, the judge's statement must clearly show that he has given individualized consideration to the character of the defendant.") (quotation marks and citation omitted).

Lyons concedes that he was sentenced, as to all of his offenses, within the standard range of the sentencing guidelines. **See** Appellant's Brief, at 16. However, Lyons also suggests that the sentencing court should have considered several mitigating factors: 1) Lyons's remorse for his actions; 2) the victim was the individual who shot first; 3) Lyons's juvenile conviction

from over ten years ago skewed his sentencing; and 4) Lyons has never faced analogous criminal charges in his past. *See id*., at 16-17.

"When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id*. Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

> Here, the sentencing court, on the record, stated that it had
>
> considered the statements of defense counsel, the defendant, the attorney for the Commonwealth, the other people who gave statements, as well as the several letters received on behalf of the defendant and his letter himself. The court has considered the defendant's age, background, and criminal record, character, and rehabilitative needs, the nature and circumstances and seriousness of the offense, and the protection of the community, as well as the sentencing guidelines in the [PSI], and obviously, the impact upon the victim and his family.

Sentencing Transcript, 7/24/18, at 18-19. The court further noted:

> This was a serious crime. The streets of Erie are not the wild west. Disputes like this can not be settled by gunfire, and that's what happened here. Mr. Lyons chose to settle this with a gun, and so he must be sentenced accordingly.

*Id*., at 19.

- 14 -

In accordance with the sentencing court's statements, we cannot say that the court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. The sentencing court clearly referenced its review of the PSI and considered all facets necessary for a sentencing determination including, most importantly, the individualized attributes associated with Lyons, himself. Therefore, Lyons's challenge to the discretionary aspects of his sentence is without merit.

Finally, Lyons contests the composition of the jury panel during the *voir dire* process, as it was, according to him, older and not racially proportionate to the general population of Erie County. Lyons does not allege that the Commonwealth was discriminatory in any way through use of a preemptory challenge, but instead suggests that the administratively-selected jury pool somehow violated his Sixth Amendment right to an impartial jury. ***See Taylor v. Louisiana***, 419 U.S. 522, 528 (1975) ("The selection of a [trial] jury from a representative cross section to the community is an essential component of the Sixth Amendment right to a jury trial."). As to the racial composition question, Lyons seems to suggest that instead of there having been only one African American that went through the jury selection process, there should have been at least three, given the demographic make-up of Erie County. ***See*** Appellant's Brief, at 19-20.

The United States Supreme Court has held that

in order to establish a *prima facie* violation of [the fair-cross-section] requirement [espoused in **Taylor**, a defendant] must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to the systematic exclusion of the group in the jury-selection process.

**Duren v. Missouri**, 439 U.S. 357, 364 (1979).

Other than a cursory citation to the demographic composition of Erie County vis-à-vis the purported pool of potential jurors in this case, Lyons has failed to establish at least two of the three prongs enumerated in **Duren**. More specifically, while Lyons has facially attacked the racial composition of the potential jury pool through the use of statistics, he does not even so much as suggest that the selection process, itself, was somehow unfair or that there has been some sort of systematic exclusion of African Americans in the jury-selection process. Instead, Lyons employs a post-hoc analysis of the composition specific to his jury pool and tersely concludes that there should have been at least two more African Americans selected into the pool. Because he has failed to meet at least two of the three **Duren** prongs, his argument fails.

As to Lyons's argument related to age-based concerns associated with the jury pool, other than a seemingly speculative assertion that "a very large percentage of the jury panel at the top of the list were in excess of 60 or 50 years of age," Appellant's Brief, at 18, he does not corroborate this statement with any kind of evidence nor does he cite to any authority indicating that the

jury pool was somehow unconstitutional. As he merely proclaims, without more, that the jury pool featured potential jurors that were several decades older than him, we are not at liberty to develop his argument any further. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (noting that this Court will not act as an advocate and develop arguments for an appellant); *see also Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) ("Arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention."). Therefore, we find his age-based challenge to the jury pool to be waived. However, even if we applied the dictates of *Duren* to an age-related challenge, Lyons has still failed to meet at least two of its prongs, given his complete lack of analysis on the issue.

Accordingly, as we find none of Lyons's issues to be meritorious, we affirm his judgment of sentence.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2019

- 17 -